NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD ERDMAN,<br><br>           Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD AND JOHN DOES ONE THROUGH TEN,<br><br>           Defendants. | Civil Action No.: 15-5776 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Union Pacific Railroad Company ("Union Pacific")'s Motion to Dismiss Plaintiff Ronald Erdman ("Erdman")'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies, and Federal Rule of Civil Procedure 12(b)(3) for improper venue. (ECF No. 18.) Alternatively, Union Pacific moves to transfer the action to the United States District Court of Nebraska pursuant to 28 U.S.C. § 1406 or §1404(a). (*Id.*) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Union Pacific's motion to dismiss for lack of personal jurisdiction.

# BACKGROUND[1]

### A. Factual Background

Union Pacific is a Utah corporation with its principal place of business in Omaha, Nebraska. (ECF No. 18-2, Certification of Jennifer Sedlacek ("Sedlacek Cert.") ¶ 4.)[2] Plaintiff Erdman is a resident of New Jersey. (2d Am. Compl. at 1.)

In December 2014, Erdman applied for employment with Union Pacific for the position of train dispatcher. (*Id.* ¶ 5.) Plaintiff claims that Union Pacific required him to take an online employment test as part of the application, which he passed. (*Id.*) On or about February 3, 2015, Erdman traveled to Omaha, Nebraska for an interview with Union Pacific. (*Id.* ¶ 6.) Then, in March 2015, Union Pacific offered Erdman employment, contingent upon his passing a medical examination. (*Id.* ¶ 7.)

Erdman alleges he suffers from a disability known as neurofibromatosis. (*Id.* ¶ 8.) As part of the employment process, Erdman was physically examined by Dr. John Dellorso at the Newark New Jersey medical office located at 400 Brewster Road, Newark, New Jersey. (*Id.* ¶ 9.) During the examination, Dr. Dellorso inquired about Plaintiff's disability. (*Id.*) Plaintiff claims that Dr. Dellorso incorrectly informed Union Pacific that patients with his disability are highly susceptible to seizures. (*Id.*)

As a result, in May 2015, Erdman received a phone call from Union Pacific's representative, Katie Heller, informing him that his employment offer had been withdrawn because

---

[1] This background is derived from Plaintiff's Second Amended Complaint and the certifications submitted in connection with this motion, which the Court accepts as true for the purposes of this motion only. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

[2] As discussed more fully below, Plaintiff contends that Union Pacific conducts business throughout the state of New Jersey (ECF No. 12, Second Amended Complaint ("2d Am. Compl.") ¶ 2), but Union Pacific asserts that it does not conduct business in New Jersey (or anywhere in the Northeast) and operates only in "23 states primarily in the Midwest and western United States." (Sedlacek Cert. ¶¶ 5-6.)

a physician employed by the railroad asserted that there was a high risk that Plaintiff could have a seizure because of his disability. (*Id.* ¶ 10.) Plaintiff alleges he has never suffered a seizure due to his disability and claims that he performed the same work responsibilities as the position offered by Union Pacific without incident while working for New Jersey Transit for over ten years. (*Id.* ¶ 11.)

This action arises from Union Pacific's withdrawal of the offer of employment to Erdman. (*Id.* ¶ 12). Erdman is claiming violations of the Civil Rights Act of 1964,[3] the Americans with Disabilities Act of 1990,[4] and New Jersey's Law Against Discrimination,[5] to the extent that Union Pacific "failed to accommodate [Erdman's] disability, failed to enter into an interactive conversation with regard to the accommodation of his disability, and discriminated against [Erdman] by not hiring him because of a disability which did not require accommodation of any kind. (*Id.*) Erdman additionally alleges wrongful termination and intentional infliction of emotional distress. (*Id.*) Jurisdiction is premised on 28 U.S.C. § 1332. (*Id.* ¶ 1.)

### B. Procedural Background

Erdman commenced this action on July 27, 2015 by filing a Complaint with this Court. (*See* ECF No. 1.) On July 30, 2015, Plaintiff filed an Amended Complaint. (*See* ECF No. 3). On September 1, 2015, Union Pacific moved to dismiss the Amended Complaint (ECF No. 7), and Plaintiff cross-moved to amend (ECF No. 9.) on September 28, 2015, United States Magistrate Judge Joseph A. Dickson issued an Order permitting Plaintiff to file a Second Amended Complaint. (ECF No. 10.)

---

[3] § 701, et seq., 42 USCA § 2000, et seq.
[4] §§ 3 (2), 101 (8), 102 (a), 42 U.S.C.A. §§ 12102 (2), 12111 (8), 12112 (a).
[5] N.J.S.A. 10:5-1, et seq.

Subsequently, on September 29, 2015, Erdman filed the Second Amended Complaint. (ECF No. 12). On October 20, 2015, Union Pacific filed the instant Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), improper venue pursuant to Rule 12(b)(3), and failure to exhaust administrative remedies pursuant to Rule 12(b)(6). (ECF No. 18-1 ("Union Pacific Mov. Br.").) On October 23, 2015, Erdman filed opposition (ECF No. 19 ("Pl. Opp. Br.").) On November 9, 2015, Union Pacific filed its reply brief. (ECF No. 20 ("Union Pacific Reply Br.").) The motion is now ripe for resolution.

## LEGAL STANDARD

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal citations omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "'prima facie case of personal jurisdiction,'" *Haffen v. Butler Specialities, Inc. et al.*, No. 10-2833, 2011 U.S. Dist. LEXIS 21581, at *7 (D.N.J. March 3, 2011) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)), and the court "is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330 (internal citations omitted). Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen*, 2011 U.S. Dist. LEXIS 21581 at *7 (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "'the burden of

4

demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction.' These contacts must be shown 'with reasonable particularity.'" *Wellness Publ'g v. Barefoot*, 128 Fed. App'x 266, 268 (3d Cir. 2005) (brackets and internal citations omitted).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales*, 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Henry Heide, Inc. v. WRH Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe*, 566 F.3d at 334. General jurisdiction results from, among other things, "systematic and continuous" contact between a non-resident defendant and the forum state. *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 725 (3d Cir. 2009). "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### A. General Jurisdiction

"'[G]eneral jurisdiction exists when a defendant has maintained systematic and continuous

contacts with the forum state.' This is a fact-specific inquiry, and the 'nonresident's contacts to the forum must be continuous and substantial' to support the exercise of general jurisdiction." *Arpaio v. Dupre*, 527 F. App'x 108, 113 (3d Cir. 2013) (internal citations omitted). In recent years, the United States Supreme Court has offered guidance on the level of "continuous and substantial" contacts that might justify the exercise of general or "all purpose" jurisdiction.

In *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846 (2011), the Court addressed a situation in which the foreign subsidiaries of an American corporation challenged a North Carolina court's exercise of personal jurisdiction over them. A unanimous Court discussed the parameters of general jurisdiction, writing that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 2853-54. The Court reiterated the principal that "[a] corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 2856 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). The Court further noted that neither regular purchases of goods from a state nor the sales of goods to a state were sufficient, in themselves, to subject an entity to general jurisdiction on claims unrelated to the sales/purchases. *Id.* at 2856-57 (citing *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 (1984)). As the Defendant subsidiaries in Goodyear had only "attenuated" contacts with the state (*i.e.*, their products were sold into the state via intermediaries)[6] and were "in no sense at home in North Carolina," the Court found that the subsidiaries were not subject to general jurisdiction in North

---

[6] The *Goodyear* Court also specified that while the "[f]low of a manufacturer's products into a forum . . . may bolster an affiliation germane to *specific* jurisdiction . . . ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.* at 2855 (emphases in original).

6

Carolina's courts. *Id.* at 2857.

The Supreme Court confirmed the narrow applicability of the general jurisdiction doctrine in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). In *Daimler*, the Court rejected a formulation of the doctrine that would "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" characterizing that broad definition as "unacceptably grasping." *Id.* at 761 (internal citation omitted). The Court observed that "the inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). The Court also clarified that "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 762, n.20. The Court ultimately found that there was "no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760, 761-62.

**B. Specific Jurisdiction**

"Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Rudzewicz*,

7

471 U.S. at 472). In other words, specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008) (internal citations and quotations omitted).

Three elements must be met to establish specific jurisdiction. *HS Real Co., LLC et al. v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. *Id.* Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id.* (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, a specific jurisdiction analysis is necessarily claim specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff]'s other claims.").

## **ANALYSIS**

Union Pacific argues that the Court lacks general and specific jurisdiction over it because there are insufficient minimum contacts to satisfy the requirements of due process. With respect to general jurisdiction, Union Pacific argues it is not "essentially at home" in New Jersey because

Union Pacific does not conduct train operations in New Jersey. (Union Pacific Mov. Br. at 6.) Specifically, Union Pacific alleges it does not have track in New Jersey, does not maintain offices in New Jersey, and does not employ any employees in New Jersey. (*Id.*) Union Pacific further asserts that any presence of its locomotives in New Jersey is the result of Union Pacific's "run-through" agreements with Norfolk Southern ("NS") and CSX railroads. (*Id.*; *see also* Union Pacific Reply Br. at 3.) Under the "run-through" agreements, Union Pacific exchanges locomotives with NS and CSX, delivering the locomotives into the care, custody, and control of the receiving party who indemnifies and holds harmless the delivering carrier. (Union Pacific Mov. Br. at 6.) NS and CSX may then utilize Union Pacific locomotives in states outside of Union Pacific's operations pursuant to the "run-through" agreements. (*Id.*) As for specific jurisdiction, Union Pacific points to the fact that Erdman initiated the relationship by reaching out to Union Pacific about the apprentice train dispatcher position, traveled to Nebraska to be interviewed for the job, and received a contingent employment offer following the interview in Nebraska. (*Id.* at 8-9.) Moreover, Union Pacific argues that its job postings on its website and other websites are not designed or intended to target New Jersey customers, thus Union Pacific did not purposefully avail itself of conducting activity in the forum state. (*Id.* at 9.)

In opposition, Erdman argues that this Court has general and specific jurisdiction over Union Pacific by relying on the certification of his father ("Arthur Erdman Cert."). (Pl. Opp. Br. at 4.) Specifically, Plaintiff argues that general jurisdiction exists because Union Pacific has transported oil and other merchandise throughout New Jersey for many years. (Pl. Opp. Br. at 4.) Furthermore, Plaintiff argues that Union Pacific uses New Jersey's railroad track system as well as other facilities to fuel and repair its equipment and that Union Pacific is subject to inspections

and safety violation citations within the State of New Jersey. (*Id.*) With regard to specific jurisdiction, Erdman argues that Union Pacific conducts extensive business activities within New Jersey, thus invoking the benefits and protections of New Jersey's laws. (*Id.* at 5.) Furthermore, Plaintiff argues that specific jurisdiction exists based on the medical examination that Union Pacific's agent/employee Dr. Dellorso conducted in Newark, New Jersey. (*Id.*) Plaintiff contends that it was during this examination that the doctor discovered his disability and improperly formulated the opinion that his disability caused frequent seizures, resulting in Union Pacific withdrawing Plaintiff's employment offer. (*Id.*)

### A. The Court Does Not Have General Jurisdiction over Union Pacific

First, the Court finds that Plaintiff failed to establish general jurisdiction over Union Pacific. The inquiry for general jurisdiction is "not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). Furthermore, "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 762, n.20. Indeed, "[a] corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear*, 131 S. Ct. at 2856 (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

10

As such, although the "[f]low of a manufacturer's products into a forum . . . may bolster an affiliation germane to *specific* jurisdiction . . . ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Goodyear*, 131 S. Ct. at 2855 (emphases in original).

It is undisputed that Union Pacific is a Utah corporation with its principal place of business in Omaha, Nebraska. (Union Pacific Mov. Br. at 2.) It is also undisputed that Union Pacific has no track, offices, or employees in New Jersey. (*Id*. at 6.) Rather, Plaintiff asserts that Union Pacific conducts extensive business within the State of New Jersey, as evidenced by the presence Union Pacific's locomotives and box cars within the state, sufficient for this Court to establish general jurisdiction. However, even construing the facts in favor of Erdman, they are insufficient to establish general jurisdiction under Supreme Court precedent

The certifications of Erdman and his father indicating that Union Pacific locomotives are present in New Jersey do not establish the necessary continuous and systematic contacts with the forum. Plaintiff's allegations do not support a finding that Union Pacific is essentially "at home" in New Jersey. *See e.g.*, *Goodyear*, 131 S. Ct. 2846 (2011). The Court finds it highly significant that Union Pacific's "run-through" agreements with other railroad companies sufficiently explain the presence of Union Pacific locomotives in New Jersey. Notably, under the "run-through" agreements, Union Pacific delivers locomotives into the care, custody, and control of NS and CSX railroads, and upon exchange, Union Pacific is indemnified. (*Id.*) Thus, any presence of Union Pacific locomotives in New Jersey is not the result of Union Pacific purposefully directing its activities to New Jersey. Like the Defendant subsidiaries in *Goodyear*, the Court finds that, based on the record before it, Union Pacific has only "attenuated" contacts with the state. Accordingly,

11

because Union Pacific lacks continuous and systematic contacts with New Jersey, the Court cannot constitutionally assert general personal jurisdiction over it.

### B. The Court Does Not Have Specific Jurisdiction

Next, the Court finds that Plaintiff failed to establish specific jurisdiction. "Specific jurisdiction is invoked when the cause of action arises from defendant's forum related activities." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (citations omitted). In other words, specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008) (internal citations and quotations omitted).

Plaintiff argues that the cause of action arises from the medical examination that Dr. Dellorso conducted in Newark, New Jersey, because "[i]t was during that examination that the doctor discovered [P]laintiff's disability and improperly formulated the opinion that [P]laintiff's disability caused him to experience frequent seizures. The doctor then informed UPRC of his opinion and the employment offer was withdrawn based upon that opinion." (Pl. Opp. Br. at 5.)

The Court disagrees with Plaintiff because the medical examination is too attenuated to the core of Plaintiff's claims asserted in the Second Amended Complaint. Plaintiff's cause of action directly arises from Union Pacific terminating Erdman's employment offer. It is undisputed that Union Pacific made and revoked Erdman's employment offer from Union Pacific's headquarters in Nebraska and that Erdman traveled to Nebraska for the job interview. (*See* Compl. at 2-3; *see also* Pl. Opp. Br. at 2-3.) These facts weigh heavily against a finding of specific jurisdiction.

Furthermore, the gathering of medical history information by a third party, which took

12

place in New Jersey for the convenience of Plaintiff, does not establish specific jurisdiction over Union Pacific. Union Pacific asserts that it contracts with Logistics Health Inc. ("LHI"), a Wisconsin corporation, to provide initial pre-placement medical examinations. (ECF No. 21, Certification of Steven Maxwell ("Maxwell Cert." ¶ 4.) LHI has agreements with thousands of clinics throughout the country to provide these services at LHI's discretion, and it is LHI, not Union Pacific, who works with the applicant to schedule an examination at a clinic with whom LHI has an agreement that is most convenient for the applicant. (*Id.* ¶¶ 5-6.) Any claim against LHI or Dr. Dellorso for his allegedly false statements to Union Pacific is distinct from the employment claims against Union Pacific that are asserted in the Second Amended Complaint.

In sum, the Court finds that Erdman's claims do not "arise out of or relate to" any activities Union Pacific "purposefully directed" at New Jersey. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros*, 466 U.S. at 414-15. Even though a potential claim against Dr. Dellorso or LHI arises from conduct in New Jersey, Plaintiff's claim against Union Pacific arises from conduct in Nebraska.

## CONCLUSION

For the reasons above, the Court grants Union Pacific's motion to dismiss Plaintiff's Second Amended Complaint for lack of personal jurisdiction. An appropriate Order accompanies this Opinion.

DATED: November 12, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

13